UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TERRY LEE ULRICH,

                 Petitioner,

v.

MICHAEL BURGESS,

                 Respondent.

_____/

Case No. 1:22-cv-104

Honorable Phillip J. Green

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

## I.     Factual allegations

Petitioner Terry Lee Ulrich is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  On April 9, 2018, the morning scheduled for Petitioner's trial, Petitioner pleaded *nolo contendere* in the Kent County Circuit Court to operating a vehicle while intoxicated-third offense, in violation of Mich. Comp. Laws § 257.625.  On May 31, 2018, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 10 to 60 years.

Petitioner sought leave to appeal his sentence in the Michigan Court of Appeals and the Michigan Supreme Court, raising one issue: that his sentence was unreasonable.  The Michigan Court of Appeals denied leave "for lack of merit in the grounds presented" on January 22, 2019.  (Mich. Ct. App. Order, ECF No. 1-1, PageID.30.) The Michigan Supreme Court denied leave by order entered July 2, 2019. (Mich. Order, ECF No. 1-1, PageID.41.)

Petitioner then returned to the trial court.  On September 23, 2019, Petitioner filed a motion for relief from judgment, raising three issues, the same issues he raises as habeas grounds II, III, and IV, herein.  By opinion and order entered October 31, 2019, the trial court denied relief.  (Kent Cnty. Cir. Ct. Op. & Order, ECF No. 1-1, PageID.47-50.)  Petitioner sought leave to appeal in the Michigan Court of Appeals and then the Michigan Supreme Court.  (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal; ECF No. 1-1, PageID.69–91; Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 1-1, PageID.51–67.)  In those applications, Petitioner identified multiple challenges

2

to his sentence that arguably fall within the boundaries of habeas grounds II and III, but he did not raise any issue relating to his *Miranda* rights. The Michigan appellate courts denied leave by orders entered July 6, 2020, and February 2, 2021, respectively. (Mich. Ct. App. Order, ECF No. 1-1, PageID.68; Mich. Order, ECF No. 1-1, PageID.92.)

On January 31, 2022, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

I.     Is the imposed sentence on Terry Lee Ulrich verifiably unreasonable?

II.    Was appointed counsel on appeal ineffective?

III.   Was the imposed sentence, being based on false, inacc[u]rate information invalid?

IV.    Arresting officer never read me my [rights] to Miranda.

(Pet., ECF No. 1, PageID.6–10.)

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the

state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529

4

U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.  Discussion

### A.  Exhaustion and procedural default

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See id.*; *Picard v. Connor*, 404 U.S. 270, 275–77 (1971) (cited by *Duncan v.*

*Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365–66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.  "[A] state may not be considered to have waived the defense of nonexhaustion unless it does so expressly and through counsel." *Rockwell v. Yukins*, 217 F.3d 421, 423–24 (6th Cir. 2000).

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Petitioner has submitted his appellate briefs.  Based on his arguments in the Michigan Court of Appeals and Michigan Supreme Court, it appears he fairly presented habeas grounds I, II, and III to both appellate courts.  Petitioner did not, however, fairly present his *Miranda* issue in either the Michigan Court of Appeals or the Michigan Supreme Court.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner may file only one motion for relief from judgment. Mich. Ct. R. 6.502(G)(1). Petitioner has already filed his one allotted motion. The rules allow a second motion "based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion." Mich. Ct. R. 6.502(G)(2). Neither exception is applicable here. Petitioner actually raised the issue in his initial motion. He simply abandoned it on appeal.

Alternatively, the state court is authorized to waive the "one motion" limit if the court "concludes that here is a significant possibility that the defendant is innocent of the crime." *Id*. Petitioner does not claim innocence; he just wants a shorter sentence. Therefore, the Court concludes that Petitioner no longer has an available state remedy.

If no further state remedy is available to Petitioner, failure to exhaust does not bar habeas review, but the claim is procedurally defaulted. *Rust*, 17 F.3d at 160. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged

8

in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks v. Straub,* 377 F.3d 538, 551–52 (6th Cir. 2004).

Petitioner does not offer any cause for his failure to raise the *Miranda* issue in the Michigan appellate courts. Factors that may establish cause include interference by officials, attorney error rising to the level of ineffective assistance of counsel, and a showing that the factual or legal basis for a claim was not reasonably available. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (citing *McClesky v. Zant*, 499 U.S. 467, 493–94 (1991) (quotations omitted))). The issue was available and Petitioner was obviously aware of it because he raised it in the trial court. He proceeded *pro se* in the Michigan appellate courts, so the failure to raise the issue cannot be attributed to counsel. Petitioner does not suggest that state officials interfered with his ability to raise the issue on appeal. Accordingly, the Court concludes that Petitioner has failed to demonstrate "cause and prejudice" that would permit the Court to disregard the procedural default bar.

Petitioner is left, therefore, with only one path to avoid the procedural default bar. He must demonstrate that he will suffer a fundamental miscarriage of justice in the absence of federal habeas review of this issue. In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court held that a petitioner can establish a fundamental miscarriage of justice only when the "constitutional error has resulted in the

conviction of one who is actually innocent of the crime." *Id*. at 324.  As noted above, Petitioner does not claim that he is actually innocent.

For all of these reasons, Petitioner's procedural default bars this Court's consideration of his *Miranda* issue.  Accordingly, Petitioner is not entitled to habeas relief on his fourth habeas ground.

## B.    A reasonable sentence

Petitioner next contends that the trial court's upward departure from the Michigan sentencing guidelines minimum sentence range was constitutionally unreasonable.  The trial court noted that Petitioner's "calculated minimum guideline range" was 14 to 58 months. (Kent Cnty. Cir. Ct. Op. & Order, ECF No. 1-1, PageID.49.)  The court departed upward from that range to impose a minimum sentence of 10 years.   (*Id*.)   The court justified its departure based upon "the defendant's extensive history with operating a motor vehicle while intoxicated," reasoning that defendant's "extensive history . . . made him highly likely to reoffend, thereby creating a high risk of harm."[1]  (*Id*.)  For a variety of reasons, Petitioner claims the resulting sentence was unreasonable.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of

---

[1] Petitioner also complains that the sentencing court erred when it tallied up Petitioner's "extensive history."  That issue is considered in § C, below.

constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  Similarly, proportionality of a sentence to the offense and the offender is not a federal constitutional requirement; rather, it arises under state law.

In *People v. Milbourn,* 461 N.W.2d 1 (Mich. 1990), the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9–11.  The "prescribed sentence range" identified in *Milbourn*, however, was not the minimum sentence range generated by statutory guidelines.  At the time *Milbourn* was decided, there were sentencing guidelines, but they were a creation of the courts.  *See* McComb, *An overview of the second edition of the Michigan sentencing guidelines,* 67

11

Mich. B. J. 863, 864 (1988) (setting out the history of the development of sentencing guidelines in Michigan through 1988).

In 1998, the Michigan Legislature enacted statutory sentencing guidelines. Mich. Comp. Laws § 777.1 *et seq.* The statutory guidelines permitted departures if there was a "substantial and compelling reason for the departure . . . state[d] on the record . . . ." Mich. Comp. Laws § 769.34(3). The guidelines also effectively immunized from state-law challenge the proportionality of minimum sentences that fell within the guidelines range. Mich. Comp. Laws § 769.34(10) ("If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."). Because the guidelines were created with reference to the principle of proportionality, further scrutiny of sentences generated by application of the guidelines was unnecessary. *People v. Babcock*, 666 N.W.2d 231, 239–241 (Mich. 2003). The *Babcock* court concluded that minimum sentences outside the guidelines range required a determination whether there was, indeed, a substantial and compelling reason to justify the departure. *Id.* at 243–44.

In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court effectively stripped away the requirement that the trial court have a substantial and compelling reason for departing from the sentencing guideline because that requirement, in part, rendered the guidelines mandatory and called into question their constitutionality under the line of authority beginning with *Apprendi*

*v. New Jersey*, 530 U.S. 466 (2000), and continuing in *Ring v. Arizona*, 536 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). *Lockridge*, 870 N.W.2d at 518, 520–21. Without the "substantial and compelling reason" guidepost, there was no longer a standard by which to judge the propriety of departure sentences.  The *Lockridge* majority held that, going forward, departure sentences would be reviewed for "reasonableness." *Id.* at 521.

The Michigan Supreme Court elaborated on the meaning of reasonableness in *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017).  *Steanhouse* based its definition of a reasonable sentence on the definition of proportionality from *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990).  Nearly three decades later, the Michigan Supreme Court had come full circle: a sentence departing from the guidelines was improper if it was disproportionate.   Although Petitioner cites only *Lockridge* in his arguments regarding reasonableness,[2] the meaning of reasonableness under *Lockridge* is based on the principle of proportionality from *Milbourn* according to *Steanhouse*.

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles.  *See Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state

---

[2] Petitioner also cites *Booker* for the proposition that sentences must be reasonable. *Booker* certainly holds that federal sentences are reviewed for reasonableness, but that standard flows from the federal sentencing guidelines statute, not the federal Constitution.  *Booker*, 543 U.S. at258–64.  The "reasonableness" standard discussed in *Booker* has no application to state sentences.

law is also not cognizable on habeas review."); *Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] . . . essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus.").  Because this Court has no power to intervene on the basis of a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's reasonableness/proportionality claim, to the extent it is based on *Milbourn* and/or *Steanhouse,* is not cognizable in a habeas corpus action.

The same reasonableness/proportionality principles are not present in the United States Constitution's Eighth Amendment.  That is so despite the fact that the *Milbourn* opinion quotes *Weems v. United States*, 217 U.S. 349, 367 (1910): "It is a 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Milbourn*, 461 N.W.2d at 9.  But the quote from *Weems* is somewhat misleading.  *Weems* was not an Eighth Amendment case.

At issue in *Weems* was not a sentence imposed by a state, or even the United States, but one imposed by the supreme court of the Philippines.  Mr. Weems' crime was making two false entries in a "wages paid" logbook relating to lighthouse services.  His punishment for that crime was significant:

The minimum term of imprisonment is twelve years, and that, therefore, must be imposed for 'perverting the truth' in a single item of a public record, though there be no one injured, though there be no fraud or purpose of it, no gain or desire of it. Twenty years is the maximum imprisonment, and that only can be imposed for the perversion of truth in every item of an officer's accounts, whatever be the time covered and whatever fraud it conceals or tends to conceal. Between these two possible sentences, which seem to have no adaptable relation, or rather in the difference of eight years for the lowest possible offense and the highest possible, the courts below selected three years to add to the minimum of twelve years and a day for the falsification of two items of expenditure, amounting to the sums of 408 and 204 pesos. And the fine and 'accessories' must be brought into view. The fine was four thousand pesetas,—an excess also over the minimum. The 'accessories' we have already defined. We can now give graphic description of Weems's sentence and of the law under which it was imposed. Let us confine it to the minimum degree of the law, for it is with the law that we are most concerned. Its minimum degree is confinement in a penal institution for twelve years and one day, a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation even in the family council. These parts of his penalty endure for the term of imprisonment. From other parts there is no intermission. His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicile without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him, and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty. No circumstance of degradation is omitted. It may be that even the cruelty of pain is not omitted. He must bear a chain night and day. He is condemned to painful as well as hard labor. What painful labor may mean we have no exact measure. It must be something more than hard labor. It may be hard labor pressed to the point of pain.

*Weems*, 217 U.S. at 365–66.

The measure of that punishment was not the United States Constitution.  In *Weems*, the United States Supreme Court was interpreting the "cruel and unusual" punishment clause of the Bill of Rights of the Philippine islands.  Moreover, the "precept of justice" referenced was not one adopted by the United States Supreme Court or by any court of the islands; it was a belief attributed to persons "who have formed their conception of the relation of a state to even its offending citizens from the practice of the American commonwealths . . . ."  *Weems*, 217 U.S. at 367.

The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

16

Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. His sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

Petitioner has failed to show that the court of appeals' rejection of his proportionality claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief.

### C. A sentence based on inaccurate information

Petitioner next contends that the trial court relied on inaccurate information when the court imposed the upward departure sentence. Petitioner focuses principally on the court's reference to nine prior drunk-driving offenses when, apparently, there were only seven. Even though claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings, *see Hutto*, 454 U.S. at 373–74; *Austin*, 213 F.3d 301–02, a state sentence might still violate the federal constitutional guarantee of due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).

To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v.*

*Stevens,* 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner has identified information that he contends was false—that he had been involved in nine prior drunk-driving offenses.  Moreover, it appears that the trial court relied on that information when it imposed a ten-year minimum sentence, because the court made specific reference to that fact.  Thus, the basic foundation for a "false information" due process violation is present.  But even if these facts establish the potential for a due process violation, the trial court's opinion on Petitioner's motion for relief from judgment makes clear that the violation was harmless.

For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  There must be more than a "reasonable possibility" that the error was harmful.  *Brecht*, 507 at 637 (internal quotation marks omitted).  The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation

that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).

"Although *Brecht* speaks of an effect or influence upon 'the jury's verdict,' . . . this standard applies as well to constitutional errors in the sentencing process." *Stewart v. Erwin*, 503 F.3d 488, 501 n.5 (6th Cir. 2007) (citing *Powell v. Collins*, 332 F.3d 376, 395 (6th Cir.2003)). Applied to Petitioner's sentencing hearing, this Court must consider whether the false fact of nine prior drunk-driving offenses, rather than seven prior drunk-driving offenses, had a substantial and injurious effect on Petitioner's sentence. Based on the sentencing judge's response to Petitioner's argument, it is apparent the false fact did not change the outcome. The judge stated that even if Petitioner had seven prior offenses rather than nine, the court's rationale still held true, i.e. Petitioner's "extensive history of driving while intoxicated made him highly likely to reoffend, thereby creating a high risk of future harm." (Kent Cnty. Cir. Ct. Op. & Order, ECF No. 1-1, PageID.49.) Because the trial court has confirmed that the outcome would be the same, under *Brecht* the error is harmless.

Petitioner makes passing reference to other "false" facts relied upon by the sentencing court. For example, Petitioner contends the court relied on the fact that Petitioner "struck another vehicle and ran" and that Petitioner was "hiding in a field." (Pet'r's Mot. for Relief from J., ECF No. 1-1, PageID.45.)[3] Petitioner responds by stating that he never in his life was charged with, convicted of, or defended against

---

[3] *See also* (Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 1-1, PageID.60–63.)

such allegations.  (*Id*.)  Similarly, Petitioner complains that the judge indicated that Petitioner was "going to kill someone."  (*Id*.)  The judge, Petitioner contends, is not able to see into the future.  (*Id*.)

Petitioner refers to these facts as "inaccurate."  That claim, however, appears to be based on the nature of the proofs—Petitioner refers to the proofs as unverifiable hearsay.  Petitioner's focus with regard to these facts appears to be an assertion that the evidence supporting them was not sufficient, rather than an assertion that he can show the facts were false.

Petitioner's suggestion that the source of the facts was not reliable does not raise a federal constitutional issue.  The Sixth Circuit described the scope of constitutional protection at sentencing as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence." *Id*. at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham–Wright*, 715 F.3d 598, 601 (6th Cir.2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016).   In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986),[4] the Supreme Court acknowledged that "sentencing courts have always operated without constitutionally imposed burdens of proof . . . ." *Id.* at 92 n.8.[5]

Petitioner's argument suggests that the federal Constitution requires that, at the very least, facts in support a sentence must be proved by a preponderance of the evidence.  There is clearly established federal law that supports the conclusion that proof at sentencing by a preponderance of the evidence would satisfy due process.

---

[4] *McMillan* was overruled in *Alleyne v. United States*, 570 U.S. 99 (2013).  *See United States v. Haymond*, 139 S. Ct. 2369, 2378 (2019) ("Finding no basis in the original understanding of the Fifth and Sixth Amendments for *McMillan* and *Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly overruled those decisions . . . .").  The *McMillan* holding that was overruled, however, was the principle that factors implicating mandatory minimum sentences did not require proof beyond a reasonable doubt.  The underlying premise from *McMillan* quoted above—that there is no constitutionally required standard of proof to support discretionary sentencing decisions—survived *Alleyne* and, indeed, was effectively highlighted by *Alleyne* when the *Alleyne* Court distinguished mandatory from discretionary sentencing decisions.  None of the cases in the line of authority that culminated in *Alleyne*—*Apprendi*, 530 U.S. at 466, 536 U.S. at 584, *Blakely*, 542 U.S. at 296, and *Booker*, 543 U.S. at 220—suggest that the constitutionally required burden of proof that applies to facts found in support of mandatory maximum or minimum sentences applies to discretionary sentences.

[5] Even the term "burden of proof" can be misleading.  As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence."  *Id.* at 695 n.20.  Generally, the Constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense and the standard of persuasion is "beyond a reasonable doubt."  There are times, however, where the Constitution permits the placement of the burden of production and persuasion on the defendant, for example, with regard to affirmative defenses.  It might be less confusing to refer to the required persuasive impact of the evidence as the standard of persuasion rather than the burden of proof.

*See, e.g., United States v. Watts*, 519 U.S. 148, 156 (1997).  *Watts* notes that proof by a preponderance of the evidence would satisfy due process, but the Court did not say that due process requires it.   Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required.   Thus, *Watts* was not an attempt to establish the bottom limit of constitutional propriety, it merely held that a preponderance of the evidence standard of persuasion was constitutionally acceptable, even for acquitted conduct.[6]

Even though the State of Michigan may require that facts supporting a sentence be proven by a preponderance of the evidence, that requirement is a matter of state law, not the Constitution.  Therefore, a sufficiency-of-the-evidence claim for sentencing, at least for a non-capital offense, is not cognizable on habeas review.

Because any error caused by the court's consideration of the "false fact" of nine drunk-driving offenses was harmless, and because Petitioner's complaints regarding inaccurate facts addresses only the sufficiency of the evidence that supports the facts, Petitioner has failed to show that the state courts' rejection of his due process sentencing claim is contrary to, or an unreasonable application of clearly established federal law and he is not entitled to habeas relief.

---

[6] As a practical matter, the preponderance of the evidence standard might be the lowest acceptable standard of persuasion, not because of the due process clause, but because anything lower than "more likely than not" is not really persuasive at all.

### D.     Ineffective assistance of appellate counsel

Finally, Petitioner contends that his appellate counsel rendered ineffective assistance because counsel failed to raise on direct appeal the issues that Petitioner raised in his motion for relief from judgment.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.   To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).   The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The trial court applied the *Strickland* standard when it rejected Petitioner's ineffective assistance of appellate counsel claims.  (Kent Cnty. Cir. Ct. Op.& Order, ECF No. 1-1, PageID.48–49.)  The trial court concluded that because Petitioner's challenges regarding his sentence lacked merit, counsel's failure to raise the challenges was not professionally unreasonable.  For the reasons set forth above, the Court likewise concludes that Petitioner's challenges regarding his sentence lack merit.  Moreover, the trial court's further conclusion—that declining to raise a meritless issue is professionally reasonable conduct—is unassailable.  *See, e.g., Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (noting that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial").  Therefore, Petitioner has failed to show that the state courts' rejection of his ineffective

24

assistance of appellate counsel claim is contrary to, or an unreasonable application of, clearly established federal law and he is not entitled to habeas relief.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Date: March 21, 2022                                   /s/ Phillip J. Green
                                                       PHILLIP J. GREEN
                                                       United States Magistrate Judge